IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FREDERICK BUCKMAN, SR.;                          07-CV-1471-BR
FREDERICK BUCKMAN, JR.; BRUCE
LANDREY; and JOSEPH SOCOLOF,                     OPINION AND ORDER

       Plaintiffs,

v.

QUANTUM ENERGY PARTNERS IV,
LP, a Delaware limited
partnership; QUANTUM ENERGY
MANAGEMENT IV, LP, a Delaware
limited partnership; QUANTUM
ENERGY MANAGEMENT IV, LLC, a
Delaware limited liability
company; QUANTUM ENERGY
PARTNERS, LP, a Delaware
limited partnership,

       Defendants.


JEFFREY V. HILL
VICKI M. SMITH
Bodyfelt Mount Stroup & Chamberlain LLP
707 S.W. Washington Street, Suite 1100
Portland, OR 97205
(503) 243-1022

      Attorneys for Plaintiffs

1 - OPINION AND ORDER

**KEITH S. DUBANEVICH**
Garvey Schubert Barer
121 S.W. Morrison Street, 11th Floor
Portland, OR 97204
(503) 228-3939

      Attorneys for Defendants


**BROWN, Judge.**

     This matter comes before the Court on Defendants' Motion to Dismiss (#9) pursuant to Federal Rule of Civil Procedure 12(b)(2) and (12)(b)(3) and Defendants' Alternative Motion to Transfer (#9) pursuant to 28 U.S.C. § 1404.  For the reasons that follow, the Court **DENIES** Defendants' Motion to Dismiss and **DENIES** Defendants' Alternative Motion to Transfer this matter to the Southern District of Texas.


<u>**BACKGROUND**</u>

     In resolving Defendants' Motion to Dismiss, the Court takes undisputed allegations in Plaintiffs' Complaint as true and resolves conflicting factual allegations in the parties' Affidavits in favor of Plaintiffs.  *Ochoa v. J.B. Martin and Sons Farms, Inc.,* 287 F.3d 1182, 1187 (9th Cir. 2002); *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clements LTD*, 328 F.3d 1122, 1129 (9th Cir. 2003).

     Plaintiffs Frederick Buckman, Jr., a resident of Alabama; Joseph Socolof, an resident of Alabama; and Bruce Landry, an

2 - OPINION AND ORDER

Oregon resident, were engaged by Plaintiff Frederick Buckman, Sr., a Washington resident, as an informal "management team" to work in "mutual utility ownership"[1] with a focus on the development of coal utilities.

Defendants Quantum Energy Partners IV, LP; Quantum Energy Management IV, LP; Quantum Energy Management IV, LLC; and Quantum Energy Partners, LP, are entities organized in Delaware with headquarters in Houston, Texas.  Defendants' business consists primarily of making energy-related investments in the United States and abroad.  Defendants have never had offices, employees, mailing addresses, post office boxes, telephone listings, bank accounts, or real or personal property in the State of Oregon. Defendants have never paid income or personal property taxes in Oregon and have not advertised or solicited business in Oregon.

It is undisputed that Plaintiffs and Defendants engaged in negotiations to form a partnership to pursue licensing and development of at least one nuclear power plant in west Texas. Plaintiffs were to pursue licensing and approval of such sites as employees of a subsidiary of Defendants named Q-Power Holdings, LLC.  Although Defendants drafted the formative documents for Q-Power Holdings, the entity was never formally created.

The relationship between Plaintiffs and Defendants

---

[1] As the Court understands it, the "mutualization" of public utilities is akin to privatization of such facilities.

originated at a meeting on December 27, 2005, in Portland, Oregon, between Buckman, Sr., and Nick Fraunfelder, an employee of Quantum Energy Partners and the son of one of Buckman, Sr.'s business associates.  Fraunfelder sought Buckman, Sr.'s advice as to his "professional and career development."  Near the end of their conversation, Buckman, Sr., described his plans for utility mutualization, and Fraunfelder gave Buckman, Sr., the contact information for Wil Van Loh, Fraunfelder's brother-in-law and a managing partner of Defendant Quantum Energy Partners. Fraunfelder suggested Van Loh might be interested in hearing Buckman, Sr.'s mutualization plans.

In early 2006, Buckman, Sr., contacted Van Loh, and they arranged a meeting in Houston, Texas, in March 2006.  At the meeting, they discussed Buckman, Sr.'s ideas regarding utility mutualization, and Van Loh suggested Buckman, Sr., should have a follow-up meeting with Toby Neugebauer, a managing partner of Quantum Energy Partners.

On August 22, 2006, Buckman, Sr., met Neugebauer in Seattle, Washington.  At the meeting, Neugebauer introduced a business model designed to focus on developing nuclear power and suggested Buckman, Sr., could contribute by researching and obtaining permits for three to five potential sites.  Although they discussed the potential for several, the only specific project site discussed in any detail was a nuclear power site in west

4 - OPINION AND ORDER

Texas.  Buckman, Sr., told Neugebauer that he wanted to involve Plaintiffs Landrey, Socolof, and Buckman, Jr., in the venture. Buckman, Sr., indicated he and his "management team" would work from a location in Portland, Oregon.

On August 29, 2006, Plaintiffs Buckman, Sr., and Landrey met with Neugebauer and others from Quantum Energy Partners in Denver, Colorado.  At the meeting, Landrey presented a project outline for pursuing nuclear-power sites and securing licensing for the development of such sites.  Neugebauer requested Landrey to prepare a two-year budget based on an assumed $50 million investment.  On August 31, 2006, Landrey sent the draft budget to Neugebauer, which included, *inter alia*, a specific line-item for a Portland-based office.

On September 19, 2006, Neugebauer, Van Loh, and two other employees of Defendants had a 90-minute meeting in the Portland Airport with Buckman, Sr.; Landrey; and the other members of Buckman, Sr.'s management team, Socolof and Buckman, Jr.  The meeting occurred over dinner and the conversation centered on Plaintiffs' goals in mutual-utility ownership and potential nuclear-power sites as well as social conversation.  Although Plaintiffs allege in their Complaint that the parties "agreed to become partners," none of the parties testified that any contractual agreement was consummated at this meeting.  In fact, Buckman, Sr., attested in his Affidavit that an agreement was not

5 - OPINION AND ORDER

formed until October 22, 2006.

The parties continued to contact each other throughout October, November, and December 2006. Defendants made several telephone calls and sent multiple text messages to the Oregon telephone numbers of Buckman, Sr., and Buckman, Jr. Defendants also emailed Plaintiffs on several occasions. On October 22, 2006, Neugebauer contacted Buckman, Sr., by telephone while Buckman, Sr., was in Portland, Oregon. Buckman, Sr., testified he and Neugebauer reached an agreement during that conversation to form a partnership and to establish Q-Power Holdings. Buckman, Sr., also testified they agreed that no other outstanding issues remained to be negotiated. A term sheet, a draft LLC agreement to form Q-Power Holdings as a Delaware LLC, and draft employment agreements were circulated among the parties. These drafts included many details concerning the creation of Q-Power and the employment of Plaintiffs including Plaintiffs' budgets, salaries, and duties. None of these documents, however, were executed by the parties. The initial term sheet dated October 23, 2006, provided, in part:

> The matters set forth in Part I of this letter constitute an expression of our mutual intent only and do not constitute a binding agreement between the parties with respect to the proposed transaction. Any such binding agreement would only result from the negotiation, execution, and delivery of written definitive agreements having terms and conditions satisfactory to the parties to such agreements.

The term sheet made any agreement subject "to the parties' due diligence."  The term sheet also contained a choice-of-law provision applying Texas law.  Part II of the draft term sheet also provided:  If "definitive agreements have not been executed by the parties on or before November 30, 2006, this letter shall terminate in its entirety without any further notice being necessary unless extended in writing by both parties."  To help negotiate these agreements, Buckman, Sr., testified he hired an Oregon attorney and that Defendants promised to reimburse him for attorneys' fees.

On December 5, 2006, Neugebauer sent Buckman, Sr., an email in which he apologized for the delay in finalizing the formal partnership agreement and indicated "the way I see it is we are partners already."

During November and December, Landrey performed services in Oregon to advance the partnership.  On December 13, 2006, Landrey met with Neugebauer in Lubbock, Texas, in anticipation of a meeting with individuals in the nuclear-power industry the following week.  At that meeting, Neugebauer indicated Landrey should have business cards made for Q-Power.  On his return, Landrey ordered business cards from an Oregon business; sought office space in Portland, Oregon; and researched potential nuclear-power sites and licensing requirements.

In January 2007, however, Defendants notified Plaintiffs

7 - OPINION AND ORDER

that they would not use Plaintiffs' services to develop the nuclear sites.  Neugebauer agreed Defendants would pay Plaintiffs' consulting fees and expenses.

Plaintiffs filed their Complaint in this Court on October 2, 2007, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Plaintiffs bring four state-law claims against Defendants:  breach of partnership agreement, breach of fiduciary duties, breach of employment contract, and unjust enrichment.  On December 17, 2007, Defendants filed a Motion to Dismiss and also requested the Court stay further discovery pending resolution of their Motion.  On January 25, 2008, this Court issued an Order granting Defendants' Motion to Stay Discovery.

On March 13, 2008, the Court heard oral argument on Defendants' Motion to Dismiss and took the matter under advisement.


## STANDARDS

I.  **Motion to Dismiss**.

When "a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the

8 - OPINION AND ORDER

jurisdictional issues." *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir. 2001)(citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  If the court makes a jurisdictional decision based only on the pleadings and affidavits submitted by the parties and does not conduct an evidentiary hearing, "the plaintiff need make only a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quoting *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995)).  As noted, when determining whether the plaintiff has made a *prima facie* showing, the court must assume the truth of uncontroverted allegations in the complaint.  *Ochoa,* 287 F.3d at 1187.  The court must also resolve factual conflicts in the parties' affidavits in favor of the plaintiff.  *Harris,* 328 F.3d at 1129.

## II.  Personal Jurisdiction.

When there is not a pertinent federal statute that governs personal jurisdiction, the federal courts apply the law of the state in which the district court sits.  *Schwarzenegger,* 374 F.3d at 800.  "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process." *Gray & Co. v. Firstenberg Mach. Co.,* 913 F.2d 758, 760 (9th Cir. 1990).  *See also* Or. R. Civ. P. 4L.  Thus, the Court must determine whether its exercise of personal jurisdiction comports with federal due process.  Due process requires the defendant to have "certain minimum contacts

with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007)(quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)(internal quotation omitted).

### A.   General Jurisdiction.

A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). This "exacting standard" requires the contacts to be the sort that approximate physical presence within the state. *Schwarzenegger*, 374 F.3d at 801. Contacts resulting from the unilateral activity of others do not establish continuous and systematic contacts with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75, n.17 (1985).

### B.   Specific Jurisdiction.

Even if the district court does not have general jurisdiction, the court may have specific personal jurisdiction over a defendant if the controversy is sufficiently related to or arose out of even a defendant's single, deliberate contact with the forum state. *See Menken*, 503 F.3d at 1058. *See also Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). To determine whether it has specific personal

10 - OPINION AND ORDER

jurisdiction over a defendant, the court must engage in the

following three-prong test:

> (1) The non-resident defendant must
> purposefully direct his activities or
> consummate some transaction with the forum or
> resident thereof; or perform some act by
> which he purposefully avails himself of the
> privilege of conducting activities in the
> forum, thereby invoking the benefits and
> protections of its laws;
> (2) the claim must be one which arises out of
> or relates to the defendant's forum-related
> activities; and
> (3) the exercise of jurisdiction must comport
> with fair play and substantial justice, i.e.
> it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433

F.3d 1199, 1205-06 (9th Cir. 2006). *See also nMotion, Inc. v.*

*Envtl. Techtonics Corp.*, 196 F. Supp. 2d 1051, 1058 (D. Or.

Nov. 21, 2001).

In the context of contract disputes, the initial "purposeful

availment" prong requires "the defendant engage[d] in some form

of affirmative conduct allowing or promoting the transaction of

business within the forum state. The focus upon the affirmative

conduct of the defendant is designed to ensure the defendant is

not haled into court as the result of random, fortuitous or

attenuated conduct." *Burger King*, 471 U.S. at 475. *See also*

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano County.*,

480 U.S. 102, 108-09 (1987). The court has specific jurisdiction

over a defendant if he "deliberately engaged in significant

activities within a State or has created continuing obligations

11 - OPINION AND ORDER

between himself and residents of the forum." *Burger King*, 471 U.S. at 475-76 (internal quotations omitted).  The unilateral actions of a third party in the forum state do not constitute purposeful availment.  *Id.*

"A contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction." *Gray & Co.*, 913 F.2d at 760.  *See also Unocal*, 248 F.3d at 924.  The factors to be considered to determine whether a contract with a citizen of the forum state is sufficient to confer personal jurisdiction include prior negotiations, contemplated future performance, terms of the contract, and the parties' course of dealing.  *Gray & Co.*, 913 F.2d at 760.  *See also Burger King*, 471 U.S. at 479 ("[W]e have emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.")(internal quotation omitted).


## DEFENDANTS' MOTION TO DISMISS
## UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)
## FOR LACK OF PERSONAL JURISDICTION

Defendants move to dismiss this matter for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Defendants contend the Court does not have general

jurisdiction over Defendants because Defendants have not maintained continuous and systematic contacts with Oregon. Defendants also contend the Court does not have specific jurisdiction over Defendants because Defendants have not had sufficient affirmative contacts with Oregon.

Plaintiff does not contend the Court has general jurisdiction over Defendants but rather that the Court has specific jurisdiction over Defendants.  Plaintiffs maintain they have alleged six facts sufficient to support a *prima facie* showing of specific jurisdiction:  (1) Defendants became partners with an Oregon resident (Landry) and an "Oregon-based businessman" (Buckman, Sr.); (2) Defendants' agents flew to Oregon to meet with Plaintiffs to discuss business opportunities; (3) the proposed entity, Q-Power Holdings to be incorporated in Delaware, planned to have an Oregon office; (4) Defendants contacted Plaintiffs at Oregon telephone numbers when negotiating the proposed agreement; (5) Defendants agreed to pay for Oregon counsel retained by Plaintiffs to assist in drafting the relevant agreements; and (6) Plaintiffs ordered business cards at Defendants' request from an Oregon business with an Oregon contact number.

**A.    Purposeful Availment.**

The first prong of the *Yahoo!* test for personal jurisdiction based on specific jurisdiction requires Plaintiff to show that

Defendants purposefully directed activities, purposefully consummated some transaction with an Oregon resident, or otherwise purposefully availed themselves of the protections and privileges of Oregon law.  433 F.3d at 1205-06.  As noted, the Court must accept Plaintiffs' uncontroverted allegations as true for purposes of this Motion and resolve all disputes in the Affidavits in favor of Plaintiffs.  *See Data Disc, Inc. v. Sys. Tech. Assoc., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").

According to Plaintiffs, Defendants formed a contractual agreement with Landrey, an Oregon resident; Defendants' agents flew to Portland, Oregon, to negotiate part of that agreement; and Defendants sent emails to Landrey and made numerous telephone calls to Landrey as well as to the Oregon telephone numbers of Buckman, Sr., and Buckman, Jr.  In addition, the agreement contemplated at least some performance by the agreed-to partnership from an office in Portland, Oregon.  Defendants also encouraged Landrey to perform services under the partnership agreement such as engaging an Oregon attorney, developing a budget, and preparing business cards in preparation for meetings with nuclear-industry officials.

14 - OPINION AND ORDER

Although Defendants' purposeful contacts with Oregon were limited, the Ninth Circuit has held in several cases that such limited contacts are sufficient to make a *prima facie* showing of purposeful availment.  For example, in *Data Disc*, the court held the plaintiff made a sufficient showing of purposeful availment by offering proof that the defendant attended contract negotiations in the forum state.  *Id.* at 1287-88.  In *Peterson v. Highland Music, Inc.*, the Ninth Circuit held the plaintiff had introduced documents that gave rise to a "strong inference" that the defendants negotiated with forum residents, that defendants "probably" wrote letters and made telephone calls to forum residents, that defendants "quite possibly" traveled to the forum to negotiate contracts, and that contracts "may" have been formed with companies in the forum state.  140 F.3d 1313, 1320 (9th Cir. 1998).  The court held these factual inferences were sufficient to support the plaintiff's *prima facie* showing of purposeful availment.  *Id.*

When applying this test in *nMotion*, this Court held the plaintiff made a sufficient *prima facie* showing of purposeful availment based on the plaintiff's allegations that the defendant made numerous contacts with the forum via emails, telephone calls, and written correspondence and by sending its agents to the forum.  196 F. Supp. 2d at 1058-59.

Defendants cite several cases in which the Ninth Circuit

questions whether allegations similar to those made by Plaintiffs (such as Defendants' use of Oregon telephone numbers and sending emails to an Oregon resident) are sufficient standing alone to establish purposeful availment. *See, e.g., Roth v. Garcia Marquez*, 942 F.2d 617, 621-22 (9th Cir. 1991)(numerous telephone calls and emails directed at the forum were not sufficient to constitute purposeful availment). Here, however, when the Court considers Defendants' contacts with the forum in the aggregate, the Court concludes those contacts are sufficient to constitute a *prima facie* showing of purposeful availment for purposes of resolving Defendants' Motion to Dismiss at this stage of the proceedings.

**B.    The "But For" Test.**

The second prong of the *Yahoo!* test requires Plaintiffs to show their claims "arise[] out of or relate[] to the defendant's forum-related activities." 433 F.3d at 1205-06. The Ninth Circuit employs a "but for" test to determine whether this requirement has been satisfied. *Id.* at 1135. *See also nMotion*, 196 F. Supp. 2d at 1059-60. To establish specific jurisdiction, "a high degree of relationship is needed where there is only one contact with the forum state. In order to support jurisdiction with only one forum state contact, the cause of action must arise out of that particular purposeful contact of the defendant with the forum state." *Id.* at 1421. Thus, the issue here is whether

Plaintiffs' claims would have arisen "but for" Defendants' contacts with Oregon.

Defendants maintain Plaintiffs' claims do not arise out of the single, short meeting of the parties in Portland, Oregon, in light of the fact that Plaintiffs' breach-of-contract claims would exist independent of that single meeting. Plaintiffs, in turn, contend their claims arise out of Defendants' numerous contacts with Oregon.

Plaintiffs' state-law claims are based on Defendants' alleged failure to abide by the terms of an agreement to form a partnership to locate and to license sites for nuclear-power generation. Some of the terms of that agreement were negotiated in Oregon with Landrey, an Oregon resident. Moreover, Landrey prepared a budget at Defendants' request (including a line-item for an Oregon office for the partnership), which ostensibly formed part of the agreement. Defendants' alleged assent to the agreement was based on Defendants' contact with the forum by means of telephone calls and emails to Landry and Buckman, Sr. Plaintiffs claims, therefore, arise out of and relate to Defendants' contacts with Oregon even though those contacts are limited because the alleged contract would not have been formed but for Defendants' contacts within the forum. Thus, the Court concludes Plaintiffs have satisfied the second prong of the *Yahoo!* test to establish the Court's personal jurisdiction over

Defendants.

**C. Reasonableness.**

The final prong of the *Yahoo!* test is that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Yahoo!*, 433 F.3d at 1206. If the plaintiff establishes the first two prongs of the *Yahoo!* test for specific jurisdiction, there is a presumption of reasonableness as to the court's exercise of jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

When weighing the Defendants' arguments that the exercise of jurisdiction would be unreasonable, the Court must consider seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken*, 503 F.3d at 1060. *See also nMotion*, 196 F. Supp. 2d at 1060-62. Thus, the defendant has the burden of presenting a "compelling case" that the court's exercise of jurisdiction over the defendant is unreasonable. *Burger King*, 471 U.S. at 476-77.

18 - OPINION AND ORDER

### 1.   Extent of Defendants' purposeful interjection.

As the Court discussed in the first prong of the *Yahoo!* test, this factor weighs slightly in favor of Plaintiffs.  The Court need not analyze this factor a second time.  *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988)(Ninth Circuit does not give this factor any weight after it is established that the defendant purposefully directed activities toward the forum state.).

### 2.   Burden on Defendants.

Unless the inconvenience to the Defendants is "so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth*, 942 F.2d 623.  The Ninth Circuit analyzes the burden on the defendant "in light of the corresponding burden on the plaintiff." *Sinatra*, 854 F.2d at 1199.

Defendants contend it would be a substantial burden to litigate this matter in the District of Oregon because all Defendants reside in Texas and the relevant documentation is located in Texas.  Such inconveniences, however, do not rise to the level of a deprivation of due process because all defendants who litigate in a foreign jurisdiction bear the burden of travel. *See id.* at 1199.  Here Defendants demonstrated a willingness and an ability to travel all across the western United States when they were working on an agreement to form a partnership with

19 - OPINION AND ORDER

Plaintiffs.  This factor, therefore, does not favor Defendants.

### 3.    Extent of conflict of sovereignty with Texas.

This factor is most relevant when the conflict is between the United States courts and a foreign sovereign.  *Roth*, 942 F.2d at 623.  *See also Sinatra*, 854 F.2d at 1199.  When courts consider conflicts of sovereignty between states, this factor is not dispositive because it would entirely undermine diversity jurisdiction.

In any event, there would not be any significant conflict of sovereignty between Oregon and Texas in this matter. Even if the choice-of-law provision from the draft partnership agreement proved to be controlling, this Court could apply Texas law.

### 4.    Oregon's interest in adjudicating this matter.

Oregon has some interest in protecting its citizens and in providing a means of enforcing contracts that its citizens form with citizens of other states.  This factor, therefore, slightly favors Plaintiffs.

### 5.    Most efficient judicial resolution.

Defendants cite statistics that demonstrate the District Court for the Southern District of Texas, Defendants' favored forum, is marginally faster than the District Court of Oregon at resolving civil cases because this Court has a slightly larger caseload.  Even if this fact slightly favors Defendants'

alternate forum, it does not make a "compelling case" that the exercise of jurisdiction by this Court is unreasonable.

### 6.    Importance of Oregon forum to Plaintiffs.

Plaintiffs chose to bring this case in Oregon, which is Plaintiff Landrey's state of residence of and is very close in proximity to Plaintiff Buckman, Sr's residence.  Plaintiffs' preference is merely one of convenience, and, therefore, this factor does not weigh heavily in favor of Plaintiffs.

### 7.    Existence of an alternative forum.

Defendants maintain the Southern District of Texas is a superior alternative forum, and Plaintiffs do not deny the viability of this alternative.  Whether there is another forum, however, "becomes an issue only when the forum state is shown to be unreasonable." *Sinatra*, 854 F.2d at 1201 (quoting *Corp. Inv. Bus. Brokers v. Melcher*, 824 F.2d 786, 791 (9th Cir. 1988)).

After weighing each of the factors, the Court finds most of the factors are neutral and do not weigh heavily in favor of any of the parties.  Defendants merely present arguments that are consistent with those made by any party forced to defend an action outside of his home state.  Contract disputes such as this one, however, unsurprisingly lead to litigation in states where a party entered into contract negotiations with residents of that state and where at least part of the contractual obligations are to be performed.

The Court, therefore, concludes Defendant has not carried its burden to present "compelling" reasons to rebut the presumption of the reasonableness of this Court's exercise of personal jurisdiction over Defendants.  *See Burger King*, 471 U.S. at 476.  Accordingly, the Court denies Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).

## DEFENDANTS' MOTION TO DISMISS
## UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(3)
## FOR IMPROPER VENUE

Defendant moves to dismiss Plaintiffs' claims for improper venue in the District of Oregon pursuant to federal Rule of Civil Procedure 12(b)(3).  Venue in actions based on diversity jurisdiction is governed by 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Defendants argue and Plaintiffs concede only the second prong of § 1391 is applicable to this matter.  Thus, the Court must determine whether a "substantial part of the events or

omissions giving rise to the claim[s]" in this matter occurred in Oregon.

Some of the negotiations of the alleged contract between Plaintiffs and Defendants took place in Oregon.  Most of the work Plaintiffs performed that underlies their claim against Defendants for unjust enrichment, including preparation of budgets, searching for office space, and researching nuclear-power plant licensing, was performed by Landrey, an Oregon resident, in Oregon.  In addition, most of the expenses Plaintiffs incurred in anticipation of the formation of the partnership such as attorneys' fees and the cost of business cards were incurred by Plaintiffs in Oregon.  The Court, therefore, finds a substantial part of the conduct giving rise to Plaintiffs' claims for breach of contract, breach of fiduciary duty, and unjust enrichment took place in Oregon.  Thus, the Court concludes venue is proper in the District Court of Oregon. Accordingly, the Court denies Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).


## DEFENDANTS' ALTERNATIVE MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)

Alternatively, Defendant moves to transfer this case to the Southern District of Texas.  Transfers of venue between the federal courts is governed by 28 U.S.C. § 1404(a), which provides:

23 - OPINION AND ORDER

> For the convenience of parties and witnesses,
> in the interest of justice, a district court
> may transfer any civil action to any other
> district or division where it might have been
> brought.

"This statute partially displaces the common law doctrine of *forum non conveniens*.  Nonetheless, *forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)(citations omitted).

When deciding a motion to transfer venue, a court "must balance the preference accorded plaintiff's choice of forum with the burden of litigating in an inconvenient forum." *Id.  See also Creative Tech., Ltd. v. Aztech Sys.*, 61 F.3d 696, 703 (9th Cir. 1995)(noting the "strong presumption" in favor of a plaintiff's choice of forum).  The defendant has the burden to "make a strong showing of inconvenience" to upset the plaintiff's choice of forum.  *Id.*  The court must weigh relevant private and public factors when considering a motion to transfer.

**A.    Private Factors.**

The private-interest factors the court must consider include:

> (1) relative ease of access to sources of
> proof; (2) the availability of compulsory
> process for attendance of unwilling
> witnesses, and cost of obtaining willing
> witnesses; (3) possibility of viewing subject
> premises; [and] (4) all other factors that
> render trial of the case expeditious and
> inexpensive.

24 - OPINION AND ORDER

*Creative Tech.*, 61 F.3d at 703.

Defendants contend the Court should transfer this matter to the Southern District of Texas because Defendants reside in Texas as do many of the potential witnesses who are not subject to this Court's compulsory process.  In support of its Motion, Defendants submitted a list of 32 potential witnesses.  Twelve of these potential witnesses reside in Texas with the remaining witnesses residing in Washington, D.C.; North Carolina; Alabama; Oregon; and Washington.

At oral argument, Plaintiffs argued the most crucial witnesses in this matter are the parties themselves who will testify as to the existence and terms of the alleged partnership agreement.  Plaintiffs also contend many of Defendants' potential witnesses either will not be necessary to try the case to a jury or are duplicative.

The Court noted at oral argument that witnesses outside Oregon can testify by videoconference, which virtually eliminates the concern over forcing witnesses to travel to another forum for trial.  Moreover, Defendants' arguments regarding the burden of travel for them and their witnesses to Oregon are unpersuasive because Plaintiffs and their witnesses would have the same burden if the Court granted Defendants' Motion.  "Merely shift[ing] rather than eliminat[ing] the inconvenience" is not a grounds for transfer of venue.  *Decker Coal*, 805 F.2d at 843.

25 – OPINION AND ORDER

On this record, the Court finds Defendants merely seek to shift the financial burden to Plaintiffs. Accordingly, the Court concludes Defendants have not presented sufficient grounds to overcome the presumption in favor of Plaintiffs' choice of forum on the basis of private-interest factors.

**B.    Public Factors.**

The public-interest factors the court must consider include:

> (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; [and] (5) the avoidance of unnecessary problems in conflicts of law.

*Creative Tech.*, 61 F.3d 696, 703-04.

Defendants contend the greater caseload congestion in the District Court of Oregon and the greater interest Texas has in this matter due to the proposed siting of a nuclear-power plant in Texas justify transferring this case to the Southern District of Texas.

The Court addressed these concerns when Defendants raised them in their Motion to Dismiss. Accordingly, the Court concludes the public-interest factors as they apply to this matter are not sufficient to overcome the strong presumption in favor of Plaintiffs' choice of forum. The Court, therefore, denies Defendants' Alternative Motion to Transfer pursuant to 28

26 - OPINION AND ORDER

U.S.C. § 1404(a).


## CONCLUSION

For these reasons, the Court **DENIES** Defendants' Motion to Dismiss (#9) Plaintiffs' claims against Defendants for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and **DENIES** Defendants' Motion to Dismiss (#9) for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).  The Court also **DENIES** Defendants' Alternative Motion to Transfer (#9) this case to the Southern District of Texas.

IT IS SO ORDERED.

DATED this 29th day of May, 2008.


/s/ Michael Mosman for

_____
ANNA J. BROWN
United States District Judge


27 - OPINION AND ORDER