IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


FREDERICK BUCKMAN, SR.;                    07-CV-1471-BR
FREDERICK BUCKMAN, JR.; BRUCE
LANDREY; and JOSEPH SOCOLOF,               OPINION AND ORDER

       Plaintiffs,

v.

QUANTUM ENERGY PARTNERS IV,
LP, a Delaware limited
partnership; QUANTUM ENERGY
MANAGEMENT IV, LP, a Delaware
limited partnership; QEM
MANAGEMENT, LP, a Delaware
limited partnership; QEM
MANAGEMENT, LLC, a Delaware
limited liability company,

       Defendants.


JEFFREY V. HILL
VICKI M. SMITH
Bodyfelt Mount, LLP
707 S.W. Washington Street, Suite 1100
Portland, OR 97205-3528
(503) 243-1022

      Attorneys for Plaintiffs


1 - OPINION AND ORDER

**MARK E. FRIEDMAN**
**JOHN C. ROTHERMICH**
Garvey Schubert Barer
121 S.W. Morrison Street, 11th Floor
Portland, OR 97204-3141
(503) 228-3939

      Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion For Leave To File Third Amended Complaint (#101) pursuant to Federal Rule of Civil Procedure 15(a)(2).  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion.


<u>**FACTUAL BACKGROUND**</u>

    The facts set forth are undisputed unless otherwise noted. In 2006 Plaintiffs Frederick Buckman, Sr.; Frederick Buckman, Jr.; Bruce Landrey; and Joseph Socolof (collectively referred to herein as Buckman) offered their management services to Defendants for the purpose of pursuing the siting, licensing, and development of nuclear-power energy plants in various United States locations and, secondarily, to research the development of coal reserves, a water desalination plant, and a utility mutualization venture in which the utility's stock would be converted to customer ownership.  Defendants are Delaware entities operating out of Houston, Texas, and comprise Quantum

2 - OPINION AND ORDER

Energy Partners IV, LP, a private equity firm; Quantum Energy
Management IV, LP, the general manager of Quantum Energy Partners
IV, LP; and QEM Management, LP, and QEM Management, LLC, two
management entities that employed Quantum's employees and were
later merged into a single entity (collectively referred to
herein as Quantum).  Quantum and its affiliates invest in energy-
related businesses as fiduciaries on behalf of institutional
investors.

On October 22, 2006, after seven months of negotiations,
Buckman, Sr., and Toby Neugebauer, one of Quantum's founders and
managing partners, reached a tentative agreement in which
Buckman's management team was to be hired by a new entity created
by Quantum.  The following day, the proposed business
relationship was memorialized in a nonbinding letter of intent
that the parties agree is an accurate reflection of their
October 22, 2006, oral agreement.

The letter of intent is characterized by the parties as a
term sheet and provides the term sheet is subject to the parties'
"due diligence" and expires on November 30, 2006, unless extended
in writing by both parties.  It outlines material aspects of the
proposed venture including Quantum's $50 million in funding, the
amount of Buckman's capital contribution, the salaries for each
of the Buckman Plaintiffs, profit distributions (called "the
promote"), corporate governance, terms and terminations, fees,

3 - OPINION AND ORDER

and expenses.  The unambiguous language of the term sheet
reflects the agreement is provisional and nonbinding on either
party until the parties complete due diligence reviews and both
parties sign final agreements.  The parties, however, never
signed the employment agreements.  Although Q-Power, LLC, was
eventually formed on December 28, 2006, it never hired Buckman or
became operational because the parties did not sign the operating
agreement for it.  Buckman, Sr., intended to create ArcWest, a
second entity that would be a Q-Power subsidiary and used for the
nuclear-power business, but it also never became operational.

Part I of the term sheet contains the following relevant
language:

> The matters set forth in Part I of this letter
> constitute an expression of our mutual intent
> only and do not constitute a binding agreement
> between the parties with respect to the proposed
> transaction.  Any such binding agreement would
> only result from the negotiation, execution and
> delivery of written definitive agreements having
> terms and conditions satisfactory to the parties
> to such agreements.  No party may bring any claim
> or action against any other party as a result of
> a failure to agree on or enter into any definitive
> agreement as contemplated in Part I.  The matters
> set forth in Part II of this letter, however,
> constitute binding agreements between the parties.
>
>                          * * *
>
> 1.2 Conditions.  The closing of the proposed
> transaction, should there be one, would be subject
> to the following conditions:
>
> (a)  the completion of due diligence reviews by
> Quantum and Buckman, the results of which are

satisfactory to each of Quantum and Buckman;

(b)  the negotiation, execution and delivery of definitive agreements mutually acceptable in form and substance to Quantum and Buckman; and

(c)  such other conditions as may be agreed to by the parties.

Part II of the term sheet provides:

2.2 Termination.  If definitive agreements have not been executed by the parties on or before November 30, 2006, this letter shall terminate in its entirety without any further notice being necessary unless extended in writing by both parties; provided, however, that such termination shall not impair or otherwise affect the rights or remedies of the parties for any prior breach of the obligations set forth in Part II of this letter.

Exhibit A, attached to the term sheet, contains material details of the proposed venture and provides in relevant part:

THE FOLLOWING PROPOSED TERMS ARE FOR DISCUSSION PURPOSES ONLY.  NO AGREEMENT TO ENTER INTO A TRANSACTION SHALL EXIST OR BE DEEMED TO EXIST UNTIL A DEFINITIVE AGREEMENT IS EXECUTED BY ALL PARTIES INVOLVED.

* * *

Legal Entity:  A Delaware limited liability company (the "Company"), to be governed by a limited liability company agreement (the "LLC Agreement").

* * *

Fees and Expenses:  The Company will reimburse Quantum and Buckman for their reasonable expenses related to the transaction, including but not limited to due diligence expenses and all related professional expenses (including but not limited to legal fees).

Notwithstanding the term sheet's automatic termination date of November 30, 2006, Quantum and Buckman continued to engage in

5 - OPINION AND ORDER

extensive due diligence throughout November and December 2006, including researching the nuclear-licensing process and regulatory framework; researching water availability and cooling options for nuclear-power facilities; attending meetings or conferences in Atlanta, New York, Washington, D.C., Wilmington, and Houston; meeting with nuclear-industry experts; engaging engineers to conduct site surveys; and otherwise proceeding as if the term sheet had not expired.  Buckman also arranged introductions for Quantum personnel to energy industry leaders. Expenses for these activities were paid, at least in part, by Quantum and characterized as consultant fees and expenses.

On November 22, 2009, draft employment agreements and the operating agreement for Q-Power began circulating among the parties.

On December 6, 2006, Buckman, Sr., wrote to Neugebauer expressing frustration with the slow progress of finalizing the contract documents.  Neugebauer responded:  "Sorry about the slow pace.  I guess the way I see it is we are partners already.  I gave you my word."

On December 12, 2006, Quantum's managing director, Scott Soler, wrote to an energy attorney and described Buckman, Sr., as "CEO of Arcwest, our nuclear power business."

On December 15, 2006, Neugebauer sent an email to several Buckman Plaintiffs regarding the status of the agreements.

6 - OPINION AND ORDER

Plaintiff Joseph Socolof responded as follows:

> T.N.: [W]here are we on comments to agreement.
>
> J.S.: Michael is going to talk to our lawyer and then turn around a final draft. I was hoping to have somrthing [*sic*] this week. I am following up. Joe.
>
> T.N.: Would like to wrap up Monday.
>
> J.S.: [M]e too. I will push to get it done.

In early January 2007, Quantum informed Buckman that Quantum no longer wished to invest in the high-risk nuclear-energy business and terminated all further due diligence and negotiations. Neugebauer agreed Quantum would pay Buckman's fees during the due diligence period. Buckman submitted an invoice for consultant fees and expenses totaling $220,000.

## PROCEDURAL HISTORY

Buckman filed its Complaint on October 2, 2007, alleging four state-law claims against Quantum including (1) breach of partnership agreement, (2) breach of fiduciary duties, (3) breach of employment contract, and (4) unjust enrichment. On March 6, 2009, Buckman filed a Second Amended Complaint adding a fifth claim for equitable estoppel. On March 11, 2009, Quantum filed its Answer, including a Counterclaim for breach of contract in the event the Court found a contract existed between the parties.

On March 16, 2009, Buckman filed a Motion for Summary Judgment against Quantum's Counterclaim, and Quantum filed a

Motion for Summary Judgment against all of Buckman's claims.  On March 30, 2009, Quantum filed a Motion (#73) to Voluntarily Dismiss its Counterclaim for breach of contract without prejudice.

At the July 2, 2009, oral argument on these Motions, the Court denied Buckman's Motion for Summary Judgment and granted Quantum's Motion for Summary Judgment in its entirety as to Buckman's Second Amended Complaint.  The Court dismissed Buckman's claims for breach of employment contract without prejudice and dismissed Buckman's claims for breach of partnership agreement, breach of fiduciary duties, unjust enrichment, and equitable estoppel with prejudice.  The Court also denied Quantum's Motion to Voluntarily Dismiss their Counterclaim for breach of contract pending the Court's ruling on Buckman's Motion.

The Court granted Buckman leave to file a motion to amend its Complaint for the third time as to possible claims for breach of employment contract and *quantum meruit*.  On July 23, 2009, Buckman filed their Motion for Leave to File Third Amended Complaint.


**<u>STANDARDS</u>**

After a responsive pleading has been filed, Federal Rule of Civil Procedure 15(a) provides parties may amend a pleading

8 - OPINION AND ORDER

"only by leave of the court or by written consent of the
adverse party; and leave shall be freely given when justice so
requires."

When determining the propriety of a motion for leave to
amend, courts consider five factors. *Manzarek v. St. Paul Fire
& Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008).  These factors
include (1) undue delay, (2) bad faith or dilatory motive on
the part of the movant, (3) repeated failure to cure
deficiencies by amendments previously allowed, (4) undue
prejudice to the opposing party by virtue of allowance of the
amendment, and (5) the futility of amendment. *Id*. at 1034.
The presence of such factors weigh against granting leave to
amend. *Schlacter Jones v. Gen. Tel. of CA*, 936 F.2d 435, 443
(9th Cir. 1991).  Denial of leave to amend is acceptable if any
amendment would be futile. *Leadsinger, Inc. v. BMG Music
Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008)(citing *DCD Programs,
Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).  Refusal
to grant leave to amend without a justifying reason is,
however, an abuse of discretion. *Leadsinger,* 512 F.3d at 532.

## DISCUSSION

Buckman seeks leave to file a Third Amended Complaint in
which they allege claims against Quantum for breach of
employment contract and *quantum meruit*.  Based on the scope of

9 – OPINION AND ORDER

the Court's inquiry at the July 2, 2009, hearing, Quantum
opposes Buckman's Motion on the ground that amending the
Complaint to assert a claim for breach of employment contract is
futile.  Quantum also opposes as futile Buckman's *quantum meruit*
claim for six months of lost productive time following the
termination of the parties' relationship in January 2007.

"When a federal court sitting in diversity hears state law
claims, the conflicts laws of the forum state are used to
determine which state's substantive law applies."  389 *Orange
Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999).
Under Oregon conflict-of-law rules, the court must determine as
a threshold issue whether there is a material difference between
Oregon substantive law and the law of the other forum.  *Weller
v. Auto-Owners Ins. Co.*, 174 Or. App. 471 (2001).  The parties
do not dispute Oregon law applies and, in any event, agree the
outcome will be the same whether Oregon or Texas law is applied.

I.    **The Five Factors Under *Manzarek*.**

Under the five factors enumerated in *Manzarek*, factors two
(bad faith or dilatory motive) and three (repeated failure to
cure deficiencies by amendments previously allowed), are not
material to this analysis.  Factor one (undue delay), is
relevant in that this case is already two years old and the
parties have not moved past the pleadings stage.  While not
determinative as to whether Buckman should be allowed to further

10 - OPINION AND ORDER

amend, this Court is mindful of the need for the litigation to move forward.  Factor four (undue prejudice to the opposing party) is also a consideration here in that Quantum has already filed one Motion for Summary Judgment as to Buckman's claims, and may incur the expense of doing so a second time.

It is factor five, however, (futility of amendment), that the Court finds is the most relevant consideration, and on which Quantum focuses its arguments.  If Buckman is to defeat Quantum's challenge to its Motion to amend, based on futility, Buckman must plead material facts that support their contention that Quantum intended to disregard the express language of the term sheet and to create an employment relationship with Buckman without the executed contracts.  In the alternative, Buckman must plead facts that support their contention under a theory of *quantum meruit* that they have incurred unpaid fees and expenses arising from the parties' due diligence.

## II.  Buckman's Claim for Breach of Employment Contract.

### A.  The Hiring Entity.

At the July 2, 2009, hearing, the Court requested Buckman to identify which Quantum Defendants allegedly employed them and under what terms.  Buckman appears to argue that the employment agreement was created with all of the Quantum Defendants during the October 22, 2006, telephone conversation with Neugebauer in which the parties agreed on the material

terms of the contract. Buckman contends Neugebauer, as a managing partner of the Quantum Defendants, acted as an authorized agent to bind Quantum to the proposed employment terms that Quantum allegedly ratified subsequently. Quantum, however, contends the parties mutually agreed that Quantum was not to be the employing entity and that the term sheet merely created a vehicle for the parties to perform due diligence before entering into formal agreements if mutually agreeable.

The parties do not dispute Buckman was offering its management services to Quantum and Neugebauer was authorized by Quantum to negotiate the letter of intent. The parties also do not dispute both parties continued their due diligence into December 2006 notwithstanding the term sheet's expiration date of November 30, 2006. In addition, it is undisputed that the parties never signed the employment agreements.

The enforceability of a contract or agreement does not depend on whether it is preliminary or an agreement to agree or an agreement to negotiate. It is the contents of the agreement and the parties' intentions that are important. *Logan v. D.W. Sivers Co.*, 343 Or. 339, 347 (2007)(internal punctuation omitted). Here the express language of the term sheet clearly reflects the parties intended a new limited-liability company to be the employing entity rather than Quantum. The email communications exchanged between the parties in December 2006

12 - OPINION AND ORDER

address the need to finalize the employment and operating
agreements which reflect the parties' understanding that there
would be a new employing entity created for this purpose.
Buckman has not alleged the employment or operating agreements
being circulated were to be signed by the Quantum Defendants.

Based on the parties' unambiguous intent, there is not
sufficient evidence in this record for the Court to conclude
that any of the Quantum Defendants intended to employ Buckman.

**B.   The Existence of an Employment Contract.**

Buckman argues all material terms of the contract were
agreed to by Neugebauer on October 22, 2006, and Quantum's
actions amounted to a unilateral offer of employment that it
subsequently ratified verbally and through its actions.
According to Buckman, Quantum, therefore, is estopped from
denying the existence of a contract.  Specifically, Buckman
points to Neugebauer's statement that "I guess the way I see it
we are partners already" and Soler's reference to Buckman, Sr.,
as "CEO of our nuclear power subsidiary" as evidence that
Quantum intended to disregard the term sheet and to create an
enforceable contract without executed agreements.

Whether a contract exists is a question of law in
Oregon.  *Ken Hood Constr. Co. v. Pac. Coast Constr., Inc.,* 201
Or. App. 568, 577 (2005).  Oregon follows the objective theory
of contracts; that is, the existence of a contract does not

13 - OPINION AND ORDER

depend on the parties' uncommunicated subjective understanding
but on their objective manifestations of mutual intent to agree
to the same express terms.  *Sollaris v. City of Milwaukie*, 222
Or. App. 384, 388 (2008)(internal citations omitted).  The
enforceability of a contract depends on the contents of the
agreement and the parties' intentions.  *Logan v. D.W. Sivers
Co.*, 343 Or. 339, 347 (2000).

> **1.  Unilateral Contract.**

Buckman contends Quantum made a unilateral offer
of employment that Buckman accepted by their partial
performance.  Buckman relies on *Slate v. Saxon,* 166 Or. App. 1
(2000), to support its contention that a contingent offer of
employment that is later withdrawn after commencement of the
work may be enforceable.  The court in *Slate,* however, found
there was not a unilateral offer of employment despite the
contingencies being met because the offer was withdrawn pre-
employment.

Unlike in *Slate*, the contingencies here were never
met because the employment contracts and the operating agreement
for Q-Power were never executed.  Although Buckman and Quantum
devoted time and money during the due-diligence period to
determine whether these projects were feasible and whether
Buckman should work for this new entity, either party explicitly
was permitted to terminate the arrangement prior to execution of

14 - OPINION AND ORDER

the binding agreements.  It is undisputed Quantum chose to terminate its due diligence and negotiations in the precise manner contemplated by the parties' term sheet, and, therefore, Buckman's Motion to amend their Complaint as to the theory of unilateral contract is futile.

> **2.  Promissory Estoppel.**

Although the Court dismissed with prejudice Buckman's claim for equitable estoppel at the July 2, 2009, hearing, Buckman, nevertheless, alleges that because they relied on Quantum's promises of employment to their detriment, Quantum is estopped from denying the validity of the employment contracts.

Under Oregon law, the elements of promissory estoppel include (1) a promise, (2) which the promisor, as a reasonable person, could foresee would induce conduct of the kind which occurred, and (3) actual reliance on the promise, (4) which results in a substantial change in position. *Neiss v. Ehlers,* 135 Or. App. 218, 223 (1995).

The issue here is whether the statements and representations of Quantum's personnel would lead a reasonable person to conclude that Quantum wished to set aside the conditions of the term sheet and to create a binding employment agreement without signed contracts.  Based on the parties' actions and stated intent, especially the mid-December email

15 - OPINION AND ORDER

communications between the parties regarding the need to
finalize the employment agreements, this Court concludes these
statements and representations by Quantum are insufficient to
defeat a motion for summary judgment and, therefore, Buckman's
Motion to amend is futile to the extent that it is based on this
theory.  *See Roth v. Garcia Marquez,* 942 F.2d 617, 628-29 (9th
Cir. 1991)(citing *Gabrielson v. Montgomery Ward,* 785 F.2d 762
765-66 (9th Cir. 1986)).

### 3.  **Ratification**.

Buckman relies on *Summit Properties, Inc. v. New
Technology Electrical Contractors, Inc*., Nos. CV-03-748-ST and
CV-03-6394-ST, WL 1490327 (D. Or. July 2, 2004), to support its
contention that Quantum created an employment relationship
because it ratified the actions of its partners and/or officers
by failing to repudiate their actions.  In *Summit*, a subsidiary
of an electrical company that had not been authorized to do so
signed a seven-year lease, paid rent for five months, had
identifying signage placed on the building and the company's
vans, had a telephone-book listing, and entered into multiple
contracts.  All of these actions were done with the knowledge or
express authority of the officers of the parent company.
Notwithstanding the parent company's denial of responsibility,
the court found it had ratified the acts of its agents.

Here Quantum's acts do not approach the level of ratification present in *Summit* or even suggest Quantum ratified the statements of Neugebauer or Soler in a manner that set aside the provisions of the term sheet.  Although Quantum encouraged Buckman to take appropriate steps necessary to research certain investment opportunities, that is precisely the purpose of due diligence.

Buckman also relies on *Logan v. Sivers Co.*, 343 Or. 339, 349 (2007), in which the Oregon Supreme Court found an otherwise nonbinding letter of intent contained three binding provisions and Defendant's breach of those binding provisions was actionable.  Here Part II of the term sheet contains four binding provisions, but Buckman does not seek to enforce them. Accordingly, *Logan* is inapplicable.

Buckman further cites several Oregon cases in which the courts found contracts were enforceable, but these cases differ factually from those of this case.  In *Ken Hood Construction*, an enforceable contract was created when a construction bid was accepted in writing notwithstanding the need to formalize the agreement.  201 Or. App. at 579.  In *Hughes v. Misar*, 189 Or. App. 258, 265-66 (2003), the court found enforceable a signed settlement agreement that the parties intended to be final notwithstanding the need for additional documents.  In *Dalton v. Robert Jahn Corp.*, 209 Or. App. 120,

131-32 (2006), the court found enforceable a written settlement agreement to divide the family's closely-held corporation despite the mother's subsequent withdrawal of consent because there was evidence that she intended to be bound by the agreement at the time of signing.   In all of these cases, the parties manifested a mutual intent to be bound by the terms of an agreement notwithstanding a subsequent change in position. Here the parties agreed Quantum was not to be the hiring entity and there was not a contract until certain conditions were met, due diligence was completed to both parties' satisfaction, and final agreements were executed.   *See Roth v. Garcia Marquez*, 942 F.2d 617, 626 (9th Cir. 1991).

On this record, therefore, the Court finds it would be futile for Buckman to allege a claim for breach of employment contract against Quantum on the theory of ratification.

### III.   Buckman's Claim for *Quantum Meruit*.

The purpose of *quantum meruit* is to prevent unjust enrichment at the expense of another.   *Hahn v. Oregon Physician's Serv.*, 786 F.2d 1353, 1355 (9th Cir. 1985).   The elements of the claim are a benefit conferred, awareness by the recipient that a benefit has been received, and judicial recognition that, under the circumstances, it would be unjust to allow retention of the benefit without requiring the recipient

to pay for it.  *Safeport, Inc. v. Equip. Roundup & Mfg., Inc.*,
184 Or. App. 690, 706 (2002).

In *Kashmir Corp. v. Patterson*, the Oregon Court of
Appeals noted:

> Quantum meruit is a form of restitution where the
> plaintiff has performed services for defendant and
> seeks to recover their fair value.  The law, in
> appropriate situations, will imply a quasi-contract.
> It is not consensual.  It is not a contract.  It is a
> remedial device which the law affords to accomplish
> justice and prevent unjust enrichment.  Quantum meruit
> presupposes that no enforceable contract exists.
>
> * * *
>
> Ultimately, however, there cannot be a valid
> legally enforceable contract and an implied  contract
> covering the same services.

43 Or. App. 45, 47-48 (1979), *aff'd*, 289 Or. 589, (1980)
(internal citations omitted).  *See also L.H. Morris Elec., Inc.
v. Hyundai Semiconductor Am., Inc.*, 203 Or. App. 54, 66 (2005).

To recover in *quantum meruit* under Oregon law, Buckman
must establish it conferred a real benefit to Quantum.
*Hazelwood Water Dist. v. First Union Mgmt.,* 78 Or. App. 226, 230
(1986).  This record reflects the due-diligence process was
vigorously pursued by both parties, and Buckman's industry
contacts and subject-matter expertise rendered a benefit to
Quantum.  The fact that Quantum ultimately decided not to pursue
nuclear-energy investments does not mean it did not gain
something valuable from its association with Buckman.

19 - OPINION AND ORDER

Although extension of the term sheet was not reduced to writing, a jury could find it was extended by the express actions and mutual consent of both parties until it was explicitly terminated by Quantum in January 2007.  In addition, a jury could find Buckman incurred certain unpaid fees and expenses in reliance on this mutual agreement to extend the time.  Indeed, following the termination, Buckman submitted a bill to Quantum for consultant fees and expenses totaling $220,000 as provided for by the term sheet and as confirmed by Neugebauer's promise to pay.  To this limited extent, therefore, Buckman's proposed claim is not futile.

Quantum does not dispute Buckman incurred fees and expenses during the due-diligence period, but Quantum correctly asserts the appropriate measure of damages under *quantum meruit* is the reasonable value of the work performed.  *See City of Portland ex rel. & Donohue & Fleskes Corp. v. Hoffman Constr. Co.*, 286 Or. 789, 802-03 (1979).  *See also B&D Inv. Corp. v. Petticord*, 61 Or. App. 585, 589 (1983).  Accordingly, Buckman's claim for six months of "lost productive time" rather than for work actually performed is futile.

Although the Court concludes Buckman's claim for breach of employment contract is futile, the Court believes the interests of justice within the context of Rule 15 warrants permitting Buckman to amend their Complaint to prove under

*quantum meruit* that they should be able to recover their unpaid fees or expenses, including attorneys' fees, for the period until Quantum's termination of due diligence in January 2007.

### CONCLUSION

For these reasons, the Court **DENIES in part** and **GRANTS in part** the Motion (#101) for Leave to File Third Amended Complaint filed by Plaintiffs Frederick Buckman, Sr.; Frederick Buckman, Jr.; Bruce Landrey; and Joseph Socolof as follows:

1.  **DENIES** the Motion to amend their Complaint as to their claim for breach of employment contract.

2.  **GRANTS** the Motion to amend their Complaint as to their claim for *quantum meruit* only to the extent that they seek unpaid consultant fees and expenses, including attorneys' fees, accrued during the due-diligence period and **DENIES** the remaining parts of their Motion as to the *quantum meruit* claim.

Buckman's Third Amended Complaint consistent with this Opinion and Order shall be filed no later than October 13, 2009.

Based on this Opinion and Order, the Motion (#73) for Voluntary Dismissal of Counterclaim for breach of contract filed by Defendants Quantum Energy Partners IV, LP; Quantum Energy Management IV, LP; QEM Management, LP; and QEM Management, LLC, is **moot**.

Finally, the parties shall confer and submit to the Court

21 - OPINION AND ORDER

no later than October 20, 2009, a joint proposal for a schedule to bring this matter to conclusion.

IT IS SO ORDERED.

DATED this 5th day of October, 2009.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


22 - OPINION AND ORDER